UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KEITH N. SMITH,

      Plaintiff,

v.                      Case No: 2:14-cv-90-FtM-29MRM

JACQUES LAMOUR, Dr., MR.
PRICE, and GEO CARE, LLC,

      Defendants.

_____/

## ORDER AND OPINION

This matter comes before the Court on defendants' Motion for Summary Judgment (Doc. #33) filed on June 3, 2015. After being directed by the Court, plaintiff filed a response in opposition (Doc. 37). This matter is ripe for review.

**I.**

Plaintiff Keith N. Smith initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 (Doc. #1) against defendants Jaques Lamour and Mr. Price in both their individual and official capacities, and GEO Care, LLC. Plaintiff is a resident at the Florida Civil Commitment Center ("FCCC") in Arcadia, Florida. The Complaint alleges Fourteenth Amendment and pendent state law claims against defendants in connection with plaintiff's medical care at the FCCC. Specifically, plaintiff claims that defendants were deliberately indifferent and grossly negligent in not

providing him with adequate and proper medical care for an injury to his Achilles tendon.

Defendants assert they are entitled to summary judgment because plaintiff has failed to present evidence establishing defendants were aware of a risk of serious harm to plaintiff and that risk was ignored. (Doc. #33, p. 12-13.) Defendants also assert there is no evidence that the defendants conduct rose to the level of gross negligence. (Id.) In support of their motion for summary judgment, defendants submit the following exhibits: (1) plaintiff's medical records (Doc. #33-1); (2) Affidavit of Jacques Lamour (Doc. #33-2); and (3) Affidavit of William Price (Doc. #33-3). Plaintiff responds opposing defendants' motion asserting that issues of material fact exist.

To the extent plaintiff alleges more discovery is necessary, the Court rejects this argument. The Court entered a Case Management and Scheduling Order on December 17, 2014 which stated discovery closed on April 1, 2015 and any motions related to discovery were due seven days thereafter. (Doc. #28.) Plaintiff failed to request an extension of time to complete discovery or file any additional discovery motions with the Court. Therefore, the Court finds that discovery is closed and plaintiff's request for more discovery is untimely.

II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp.

Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment."  Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## III.

The following is a chronological history of plaintiff's request for medical care and the medical care rendered to plaintiff at the FCCC as supported by the record.

On May 28, 2013, plaintiff was seen by Physician's Assistant Baker (PA Baker) in sick call for "sudden" pain in his right ankle. (Doc. #33-1, p. 31.)  Plaintiff stated the pain began four days prior and adamantly denied injury due to sports or exercise. (Id.) It was noted the plaintiff had either a sprain or pathological fracture.  (Id.)  X-rays were ordered to rule out a fracture and plaintiff was given a right ankle split and directed to not put weight on the right ankle.  (Id. at p. 86.)  The x-rays were completed on the same day and the results were negative except for

a planter spur.  (Id. at p. 104.)  Plaintiff was seen for a follow

up on June 4, 2013.  (Id. at p. 29.)

Defendant Lamour is a licensed physician practicing medicine

at FCCC and board certified in internal medicine. (Doc. #33-2, p.

1.)   On June 11, 2013, plaintiff was seen by Dr. Lamour who

conducted a physical exam and found bruising in the area of the

right ankle.   (Doc. #33-1, p. 31.)   Dr. Lamour ordered blood

testing of plaintiff's Coumadin level to see if it contributed to

the bruising.  (Id. at p. 83.)  On June 24, 2013, plaintiff was

seen by PA Baker for right ankle pain.  (Id. at p. 28.)  Plaintiff

saw Dr. Lamour again on July 2, 2013.  (Id. at p. 27.)  Dr. Lamour

conducted a physical examination which revealed pain and swelling

localized in the Achilles area.   (Id.)   Dr. Lamour diagnosed

plaintiff with Achilles tendonitis and scheduled plaintiff for a

Kenalog injection in the right ankle area.  (Id.)  Plaintiff did

not seek medical care for right ankle/Achilles complaints again

until October 17, 2013, when plaintiff was seen by PA Baker for

issues with the second and fourth toes on his left foot.  (Id. at

p. 19-20.)

On October 28, 2013, Dr. Lamour completed another physical

examination of plaintiff and noted that the swelling had decreased

and now noticed there was an indentation in the Achilles tendon.

(Id.)  Dr. Lamour ordered an MRI.  (Id. at p. 16.)  Dr. Lamour saw

plaintiff again on November 4, 2013 for his right ankle pain.  (Id. at p. 19.)   The MRI completed on November 25, 2013 of the right ankle revealed complete Achilles tear with superior retraction. (Id. at p. 105-107.)  Based on the MRI findings, on December 3, 2014, Dr. Lamour referred plaintiff to an outside orthopedic surgeon for the Achilles tear.  (Id. at p. 3.)

On January 3, 2014, plaintiff saw Dr. Connolly, an orthopedic surgeon.  (Id. at p. 1-2.)  During this appointment, plaintiff stated for the first time in the medical record that he felt a pain in the back of his leg and that another resident may have kicked him.  (Id.)  Dr. Connolly noted a surgical option for plaintiff would be for an Achilles reconstruction with tendon graft but plaintiff declined the reconstruction surgery.  (Id.)  Dr. Connolly noted plaintiff was doing quite well and able to ambulate fairly well.  (Id.)  Dr. Connolly further stated that plaintiff was not interested in a Cam Walker boot or any surgical intervention.  (Id.)

On February 17, 2014, Dr. Lamour referred plaintiff for another consultation with Dr. Connolly but plaintiff declined to see Dr. Connolly a second time.  (Id. at p. 75.)  The record reflects that plaintiff was provided with pain medications including Vicodin. (Doc. #33-1, pp. 62, 68, 73, 74; Doc. #33-2, ¶ 25.)

## IV.

To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove: (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law.  Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).  In addition, a plaintiff must establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation.  Marsh, 268 F.3d at 1059; Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

The Court recognizes that the FCCC is not a prison and plaintiff is not a prisoner.  Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002).  Under the Due Process Clause of the Fourteenth Amendment, involuntarily committed persons retain substantive liberty interests, which include at least the right to adequate food, shelter, clothing and medical care; safe conditions of confinement; and freedom from unnecessary bodily restraint. Youngberg v. Romeo, 457 U.S. 307, 315-316 (1982).  To determine whether the nature and extent of an infringement of one of these liberty interests rises to the level of a due process violation,

a court must balance the individual's liberty interest against the relevant state interests.  Id. at 320-321.

As the rights of the involuntarily civilly committed are "at least as extensive as the rights of the criminally institutionalized," actions which would violate the Eighth Amendment rights of a prisoner would likewise constitute a violation of the due process rights of an individual who was been involuntarily civilly committed.  See Dolihite v. Maughon By and Through Videon, 74 F.3d 1027, 1041 (11th Cir. 1996).  Indeed, the Eleventh Circuit has recognized that "relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed."  Id.  Therefore, while recognizing that plaintiff is not a prisoner, this Court will utilize relevant Eighth Amendment case law in its consideration of this case.

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a plaintiff's health or safety. Estelle v. Gamble, 429 U.S. 97, 97 (1976).  To establish an Eighth Amendment claim for deliberate indifference to a serious medical need, a plaintiff must prove: (1) a serious medical need; (2) deliberate indifference to that need by the defendants; and (3) causation between the defendants' indifference and the plaintiff's injury.  Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010).

In order to establish deliberate indifference to a serious medical need on the part of a defendant, a plaintiff must show subjective knowledge of a risk of serious harm and disregard of that risk by conduct that is more than gross negligence.  Townsend v. Jefferson County, 601 F.3d 1152, 1158 (11th Cir. 2010).

"A difference in medical opinion does not constitute deliberate indifference so long as the treatment is minimally adequate."  Whitehead v. Burnside, 403 F. App'x 401, 403 (11th Cir. 2010) (citing Harris v. Thigpen, 941 F.2d 1495, 1504-05 (11th Cir. 1991)).  A doctor's decision about the type of medicine that should be prescribed is generally "a medical judgment" that is "an inappropriate basis for imposing liability under section 1983." Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating that "[m]ere medical malpractice, however, does not constitute deliberate indifference.  Nor does a simple difference in medical opinion.").  "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Co. Pet. Ctr. Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504).  Consequently, "[d]eliberate indifference is not established where an inmate received care but desired different modes of treatment."  Id.

"Deliberate indifference" includes "the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem," where "the delay does seriously exacerbate the medical problem," and where "the delay is medically unjustified." Harper v. Lawrence Cnty., 592 F.3d 1227, 1235 (11th Cir. 2010) (quoting Taylor, 221 F.3d 1254, at 1259 (11th Cir. 2000). See also McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Harris v. Coweta County, 21 F.3d 388, 393-394 (11th Cir. 1994); Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990). A delay of even hours may be deliberate indifference given the "reason for the delay and the nature of the medical need." McElligott, 182 F.3d at 1255. However, "[a]n inmate who complains that delay in medical treatment [rises] to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay." Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds Hope v. Pelzar, 536 U.S. 730 (2002). "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." Whitehead, 403 F. App'x at 403.

**1. Defendant Dr. Lamour**

    **a. Fourteenth Amendment**

Plaintiff alleges a violation of his Fourteenth Amendment rights against Dr. Lamour for misdiagnosing his Achilles injury and not properly referring him to an outside provider for a proper diagnosis. (Doc. #1, p. 9.)  There is nothing in the record that suggests plaintiff's medical condition was not serious, and defendants do not argue that the condition was not serious.  Thus, the Court concludes that plaintiff had a sufficiently serious medical condition to satisfy the first element of a deliberate indifference claim.

With regard to the deliberate indifference element, plaintiff alleges he suffered a permanent injury due to the deliberate indifference of Dr. Lamour.  Plaintiff asserts there was an unreasonable delay in Dr. Lamour referring him to an outside provider.  (Id.)  Plaintiff was seen by Dr. Connelly on January 3, 2014, eight (8) months after his injury.  According to the Complaint, Dr. Connelly advised plaintiff that "since so much time had elapsed since the injury that nothing could be done to repair the injury." (Id. at p. 8.)  Plaintiff alleges Dr. Connelly told him he should have been either hospitalized immediately, or should have been seen by a specialist within forty-eight (48) hours after the injury.  (Id.)  Had this occurred, "there would have been a distinct possibility that plaintiff could have received corrective surgery and regained full use of his leg and tendons."  (Id.)

Plaintiff claims that, because he was not seen in a timely fashion, his injury is permanent. (Id.)

Defendants assert plaintiff received timely and appropriate medical treatment based on the information that plaintiff provided them at the time. (Doc. #33, pp. 11-12.) In his affidavit, Dr. Lamour states that when plaintiff was initially seen on May 28, 2013, he did not describe an injury or traumatic event to the ankle and it was thought he had a sprain or a pathologic fracture. (Doc. #33-2, p. 2.) Based on Dr. Lamour's experience, torn or ruptured Achilles tendons can only result from a traumatic even or blunt force. (Id.) Dr. Lamour attests that as a result of plaintiff's failure to describe a traumatic event or any type of blunt force to the Achilles area, an Achilles tear was not considered as a diagnosis. (Id.) Dr. Lamour states there was no unnecessary delay on the part of himself or FCCC in treating plaintiff (Id. at p. 5); plaintiff has received competent and quality medical care at the FCCC (Id.); and that plaintiff appears to be doing well and the medical records reveal no complaints involving ankle/Achilles since January 3, 2014. (Id.)

In the Complaint plaintiff stated that he "spontaneously felt a sharp pain in his right lower leg, and fell to the floor." (Doc. #1, p. 7.) Plaintiff does not allege the injury was caused by him being kicked by another inmate. According to the record, plaintiff

received immediate medical care after his injury and x-rays were taken of plaintiff's ankle to ensure no fracture was present. (Doc. #33-1, pp. 31, 86, 104.)  Plaintiff was instructed not to put weight on the right ankle and given an ankle split.  (Id. at p. 86.)  Plaintiff was provided further treatment for his injury including blood testing and a Kenalog injection.  (Id. at pp. 27, 83.)  Once the swelling had gone down, Dr. Lamour could see that an indentation was present on plaintiff's Achilles tendon and ordered an MRI.  (Id. at p. 16.)  Based on the MRI findings, plaintiff was referred to Dr. Connelly, an outside orthopedic surgeon.  (Id. at p. 3.)  According to Dr. Connelly's report, after the initial injury, plaintiff's pain "gradually got better" and plaintiff "was able to walk throughout this period of time." (Doc. #33-1, p. 1.)  "[T]he patient is doing quite well overall and is still able to ambulate fairly well."  (Id. at p. 2.)

Plaintiff has not presented any evidence that he received inadequate medical care for his ankle injury.  The record does not support plaintiff's allegations that Dr. Connelly stated plaintiff should have been hospitalized immediately or seen by a specialist within forty-eight (48) hours after the injury (Doc. #1, p. 8.) Even assuming *arguendo* that there was an improper delay in plaintiff's medical care, there is no verifiable evidence that a delay worsened plaintiff's medical condition.  Nothing in Dr.

Connelly's report indicates he was concerned with the amount of time that had lapsed before seeing plaintiff, and there is no evidence that Dr. Connelly considered plaintiff's injury "permanent and life-long" because he was not seen in a timely fashion.  To the contrary, Dr. Connelly noted a surgical option for plaintiff would be for an Achilles reconstruction with tendon graft but plaintiff declined the reconstruction surgery.  (Doc. #33-1, p. 2.)

"[A] plaintiff does not establish deliberate indifference merely because, although he received medical attention, he desired different modes of treatment than what he received." Bell v. Sec'y of Florida Dep't of Corr., 491 F. App'x 57, 59 (11th Cir. 2012). Plaintiff's personal belief that he should have been referred to an outside provider earlier and his disagreement with the treatment prescribed by medical staff are not sufficient to demonstrate a claim of deliberate indifference.  See Jackson v. Jackson, 456 F. App'x 813, 815 (11th Cir. 2012) (citing Adams, 61 F.3d at 1545). Accordingly, the Court finds that the record demonstrates that, at a minimum, the medical care provided to plaintiff was adequate. The care plaintiff received was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris, 941 F.2d at 1505. Therefore, based on the record and applicable law, the Court finds

that defendant Dr. Lamour is entitled to the entry of summary judgment on plaintiff's Fourteenth Amendment medical indifference claim.

### b. State Law Claims

Pursuant to 28 U.S.C. § 1367, plaintiff also brings pendent state law claims of gross negligence and medical malpractice against Dr. Lamour. In Chapter 766 of the Florida Statutes, the Florida legislature has codified the tort of medical malpractice. Under chapter 766, a "health care provider" may be liable for the death or personal injury of a person, if that death or injury resulted from the health care provider's negligence. Fla. Stat. Ch. 766.102(1). It is not disputed that Dr. Lamour is a "health care provider" for purposes of the statute, and so the question is whether "prevailing professional standard of care" to be the "level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." Auster v. Strax Breast Cancer Institute, 649 So.2d 883 (Fla. App. 1995).

As discussed above, plaintiff has not presented evidence that he received inadequate medical care for his ankle injury and there is no evidence that the alleged delay in being referred to an outside provider worsened plaintiff's medical condition. In fact,

the record show plaintiff received timely and appropriate medical treatment for his ankle injury. The Court finds defendant Dr. Lamour is entitled to summary judgment on plaintiff's medical malpractice claim because plaintiff has failed to provide sufficient evidence that Dr. Lamour's medical care represented a breach of the prevailing professional standard of care.

To the extent plaintiff alleges a claim against Dr. Lamour for gross negligence that does not constitute medical malpractice, Dr. Lamour is entitled to summary judgment. Plaintiff has not presented evidence of negligence involving his medical care or of a causal connection between any such negligence and his injury. In other words, not only has plaintiff failed to present evidence of deliberate indifference; he has failed to present evidence even of negligence. Therefore, based on the record, the Court finds that defendant Dr. Lamour is entitled to the entry of summary judgment on plaintiff's state law claims.

## 2. Defendant Price

A defendant cannot be held liable under § 1983 based solely on the theory of *respondeat superior* or vicarious liability. Hyland v. Kolhage, 267 F. App'x 836, 841 (11th Cir. 2008); Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). Supervisory liability can be established only "when the supervisor personally participates in the alleged constitutional violation or when there

is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotations omitted).  When determining whether there is a causal connection between a defendant's action and the alleged deprivation of a constitutional right, mere knowledge of a potential deprivation is not sufficient to impose liability on a supervisor. Iqbal, 556 U.S. at 677.  Rather, in order to state a claim against the supervisor, the plaintiff must allege purposeful action by the supervisor to deprive plaintiff of a constitutional right. Id.

Plaintiff asserts claims against Mr. Price under the principle of *respondent superior* because he is the head of FCCC Medical. (Doc. #1, p. 6.)  Plaintiff asserts Price is a party to his claims because Price makes suggestions and decisions based on the type of care that residents receive at the FCCC.

Defendant Price is the Health Service Administrator (HSA) at FCCC. (Doc. #33-3, p. 1.)  Pursuant to his responsibility as HSA, Price administratively manages and evaluates Health Service activities and ensure compliance with DCF contractual guidelines. (Id. at p. 2.)  Price does not practice medicine at FCCC and relies on physicians, physician's assistants, and nurses to treat the patients/residents at FCCC.  (Id. at p. 1.)  Price attests that the medical staff at FCCC did not discuss with him and he did not

offer medical advice concerning plaintiff's ankle/Achilles issues. (Id. at p. 2.)

The Complaint does not allege defendant Price was personally involved in any incident of misdiagnosis or inadequate medical care and the record provides no evidence of personal involvement. Plaintiff also fails to allege or establish a causal connection between the actions of defendant Price and plaintiff's allegations of medical indifference. See Mathews, 480 F.3d at 1270. Consequently, defendant Price is entitled to the entry of summary judgment on plaintiff's claims against him.

### 3. Defendant GEO Care, LLC[1]

Notably, GEO Care is not a governmental entity, but a private corporation in contract with Florida's Department of Children and Families to operate the FCCC. "Where the function which is traditionally the exclusive prerogative of the state is performed by a private entity," that private entity, like a municipality,

---

[1] Section 1983 claims against the defendants in their official capacities is properly understood as a cause of action against the government entity they represent. See Cook v. Sheriff of Monroe County, 402 F.3d 1092, 1115 (11th Cir. 2005) Where the entity may be sued, there is no need to allow an official-capacity action. Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). Plaintiff alleges a claim against the entity that the defendants Dr. Lamour and Price represent, which is GEO Care, LLC. Accordingly, the Court will dismiss plaintiff's claims against defendants Dr. Lamour and Price in their official capacities as duplicative.

may be held liable under § 1983.  Ancata v. Prison Health Servs.,
769 F.2d 700, 703 (11th Cir. 1985).  To prevail on a Section 1983
claim against a municipality, "a plaintiff must show (1) that his
constitutional rights were violated; (2) that the municipality had
a policy or custom that constituted deliberate indifference to
that constitutional right; and (3) that the policy or custom caused
the violation."  Whittington v. Town of Surfside, 269 F. App'x
918, 921 (11th Cir. 2008).  Under Monell, a plaintiff must
establish that an official policy or custom of the municipality
was the "moving force" behind the alleged constitutional
deprivation.  Monell v. Dep't of Soc. Serv., 436 U.S. 658, 693–
694, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978).  "A policy is a decision
that is officially adopted by the municipality, or created by an
official of such rank that he or she could be said to be acting on
behalf of the municipality."  Goebert v. Lee County, 510 F.3d 1312,
1332 (11th Cir. 2007) (citing Sewell v. Town of Lake Hamilton, 117
F.3d 488, 489 (11th Cir. 1997)).  "A custom is an unwritten
practice that is applied consistently enough to have the same
effect as a policy with the force of law."  Goebert, 510 F.3d at
1332 (citing St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.
Ct. 915, 99 L. Ed. 2d 107 (1998)).  "Demonstrating a policy or

custom requires "show[ing] a persistent and wide-spread practice."
Depew v. St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986).

According to the Complaint, GEO Care was aware, or should have been aware, of the gross negligence and deliberate indifference that plaintiff and other similar situated residents of FCCC were subject to.  (Doc. #1, p. 10.)  Plaintiff alleges that there is a pervasive custom promulgated by GEO Care to forego medical treatment by outside providers due to the cost incurred. Plaintiff attributes a number of recent deaths to misdiagnosis of certain types of cancers and other injuries by FCCC residents that were not properly treated.  (Id.)  Plaintiff claims that the inadequate treatment is due to GEO Care pressuring the FCCC administration not to spend any money on medical needs of the residents.  (Id.)  Plaintiff states that any resident who seeks outside medical care for legitimate medical need is put off because of cost concerns.  (Id. p. 12-13.)

Defendants assert there is no evidence that GEO Care has a pattern of delaying medical care or administering cheaper care to the detriment of residents at FCCC.  (Doc. #33, p. 13.)  A review of the record support this position.  Nothing in the record suggests GEO Care, as the result of a custom or policy, was deliberately indifferent to plaintiff's medical needs. Specifically, plaintiff's assertion that GEO Care, pursuant to

policy, deprived him of medical treatment based on cost, is wholly conclusory and insufficient to establish a "custom or policy." Plaintiff was not told he was being denied medical treatment based upon an official policy to contain costs, and plaintiff does not provide any facts or evidence to support the allegation that defendant GEO Care has a history of refusing to provide medical treatment or refer to outside providers based on costs. Furthermore, the Court has already found that plaintiff's constitutional rights were not violated because he received adequate medical treatment for the injury to his Achilles tendon. Accordingly, GEO Care is entitled to summary judgment as to plaintiff's claims against it.

Accordingly, it is now

**ORDERED:**

Defendants' Motion for Summary Judgment (Doc. #33) is **GRANTED**. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida this ___16th___ day of March, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: ftmp-2
Copies: All Parties of Record

21